Good morning. My name is Lawrence Fryman. I represent the appellants in this matter. I'm a cooperating attorney with the American Civil Liberties Union. Knowing that the court has been briefed on the facts of this case, I would like to focus on my argument. I would like to reserve three minutes for rebuttal. This was action taken under color of law. This abuse was only made possible because the correctional officers were clothed with the authority of state law and they could only gain entry into the jail because of their status. Under United States v. Classic, the Supreme Court held that a misuse of power made possible only because a wrongdoer is clothed with the authority of state law is action taken under state law. Here, both officers were on duty. The area had limited access only to authorized personnel. And Officer Herjack even thought his actions were legal. There's a genuine issue of fact here as to whether the acts were prohibited by written policy by the department. Van Oort, as the appellees will have you believe, is not instructive here. This was a case from this court and involved an off-duty officer who wore a mask and committed an assault and attempted robbery that was not under the color of state law. Let's assume you're over that hurdle. Okay. How do you deal with Monell? Well, Monell, we deal with the ratification. This has happened before, it happened now, and the officers were not terminated. They were given 160 hours and 120 hours suspension, respectively. The theory is that the absence of a policy after the first historical event is sufficient to satisfy Monell. Well, this was a de facto policy, and as Monell contemplates, a de facto policy would be the same as a regular policy. I mean, this had happened before. At this facility? Yes. This was a Clark County Detention Center, which is a jail for pretrial detainees. The 14th Amendment would apply here. This is a clear due process violation. These officers were tormenting these pretrial detainees. How is a suspension a ratification? Well, a suspension would not necessarily be a ratification. So what was the ratifying act? Well, the ratifying was not terminating. And what's your best case on that? I don't have case law. So they took punishment. They didn't say this is okay. They suspended them. So why isn't that enough to show lack of ratification? Well, my clients lost their hearing. I mean, these officers were tormenting them. Well, that doesn't answer the question at all. How does it show that the municipality condoned it? Well, by a de facto policy. I mean, by not terminating them. Okay, you're going back and forth. Is it a policy de facto? In other words, a custom? Or is it ratification? There are two distinct Monell theories here. You started off with ratification. Right. And your argument on that is they didn't terminate them, but you don't seem to have any support for that. So now you're arguing de facto policy. So what's your best evidence on that? Well, I would say it's a little bit of both, actually. It was a de facto policy because it happened before, it happened again, and they were not terminated. But it was also, as you suggest, ratification because the sergeant turned a blind eye to it and didn't even want to hear about it until the pretrial detainees filed their complaint with the jail. So I would say it's a little bit of both. Why isn't it an adequate remedy just to have a case against the individual officers? Well, because it wouldn't be a – well, this is a brief for the individual officers. There's two pages. And the judge at the district court level dismissed the claims at this point because the court has jurisdiction. I understand, but I'm just suggesting you have a remedy against the individual officers. Manila liability is different. I understand. Why do you need Manila liability? Well, I mean, we can't take this to state court. The state judges are elected officials. They're politicians in a sense. And they themselves don't have a de facto policy, but they don't want to have any problems with the police in Las Vegas. So that's why we have to go to federal court on these claims. That's a pretty extreme state. Is there anything in the record to establish that? Well, I mean, as you note, you know, the elected officials as judges don't have the same, how should I say it, incentive, you know, to hear these cases for what they are. There are a lot of state court judges in the Ninth Circuit who are elected who are very fine independent jurists. Well, I'm not suggesting that the judges aren't fine jurists. I'm just suggesting that they don't, politically in Las Vegas, they don't want to have a problem with the Las Vegas Metropolitan Police Department. And where is that in the record? I don't believe that's in the record, but I'm answering your question on why we didn't bring this in state court. That wasn't my question. I said don't you have an adequate, if you have a federal case, and what I meant to say was the federal case remaining against the individual officers, why is that, why doesn't that provide you with an adequate remedy as opposed to adding on with no liability? Well, because this was a, we believe this was a policy by the sheriff, you know, by the official municipality. And the Las Vegas Municipal Police Department is a separate governmental entity from the state. So we wanted to sue them in their official capacity against the jail and let these officers know that this can't happen. So. Okay, you want to save some time? I would like to, yes, please. Thank you for your. Good morning. Good morning, Your Honor. May it please the court. My name is Tom Dillard. I represent the Las Vegas Metropolitan Police Department, Supervisor Sergeant Leak, the Sheriff Bill Young, as well as any defendants named officially only. Have you heard anything in the argument that we just listened to that's not responded to in your brief? The only thing I would like to comment in terms of what was argued, Your Honor, is the suggestion that there's a historical precedent to this, to which I believe the record is devoid of any such evidence. There was testimony that the one officer heard of somebody letting off firecrackers, just stories, in an old facility. And that old facility was pre-1984. There was testimony in the 27 years of existence of Metro that there had been firecrackers thrown in briefing rooms as a prank among officers. But there had been no evidence at all that any inmate was a part of some ill-advised prank like this happened in this instance. One of the senior people in the chain of command thought that these officers should be terminated. Is that right? That's correct, Your Honor. The assistant sheriff, when it came to him, recommended they go to a pre-term board, and it did. And when it went to the sheriff, who is the final policymaker and has final authority on discipline, decided that, in looking at it, there had been no other violations of policies that these particular officers committed and decided on a very lengthy suspension without pay in lieu of the actual termination. But when it came to his desk, it was on recommendation for dismissal. There are two issues here for which a summary judgment was granted on behalf of the appellees that are least for arguing. One is the color of law, and the second is Monell or supervisory liability. Everything that's even argued here all has to do with what happened after the fact. When there was a suspension and heavy discipline levied, there is no evidence to suggest that there was any precursor for which a policy might be derived or for which deliberate indifference or reckless disregard might be evidence of. There is no evidence that something like this happened before, that it was overlooked, ratified, patted on the back. There's no assistance, encouragement at all to connect what these officers did to a policy or custom. And absent that moving force evidence, I think either on supervisory liability or on Monell, it just falls well short of the mark. How do you defend the district court's summary judgment grant to the officers in their individual capacity when they did not move? The argument that I made or my clients made was under color of law, for which that's an argument they share. How can they not be under color of law? The only reason they had access to the jail is because they could act under color of law. Well, Your Honor, I don't believe that access is the critical inquiry. And I would concede that point, that they were in a custodial setting at the time and these were correctional officers. But there has to be some linkage with their official duties that acts in a personal pursuit, in this case, a completely ill-advised horseplay has no correlation. I think it goes beyond ill-advised horseplay. This was very dangerous. You know that. You shouldn't try to brush it off as horseplay when you're throwing in some explosives that did cause damage and could have caused a lot worse. Well, and I think agreeing with you on that point, it is the antithesis of security, of discipline to do this. And in terms of correlation with their official duties, one case that was cited. You see, I think the problem with your argument is this, and tell me how you would respond, is that if you assume that a 1983 claim fails on the color of law prong, if they act outside of official policy, then there's no 1983 liability for anything. If a police officer goes in and beats up a suspect and people say, well, no, no, that's in excess of their official duties. Why is there any difference between that type of case and what you're talking about here? Well, I'm not suggesting or arguing that the Monell kind of policy or custom is coextensive with color of law. I can entirely agree with you. But I think from the outset, excuse me, the law is that if there is no correlation between what they are, their badge of authority, in this case, the only thing that you can say is they had access to them because they were inmates. So if a prison guard rapes a pretrial detainee, it's not under color of law? No, I think there's case law to suggest otherwise. What's the difference? The difference is these particular inmates were in a day room area where trustees watching television, there was no exertion of authority here to direct them in any way to control what they were doing. They were sitting there minding their own business when he thought it would be funny to throw the firecracker in the module. But other than the fact that they're inmates, there was no exertion of authority to influence or control over them. I mean, other than the fact that they were under state control at the time, confined, there was no state action? I mean, that seems like a logical disconnect to me. Well, I guess I think there is case law, Your Honor, that just because they are inmates does not by definition establish color of law. These are pretrial detainees, aren't they? Correct. Well, I don't know whether they were particularly serving smaller sentences of pretrial detainees, but they were in a pretrial detainee custodial setting. Now, I'm back to the question I started you with.   are the ones that are in charge of the pre-trial detainees in the eyes of the law, are as innocent as anyone in this room, right? From a constitutional standpoint, yes, Your Honor. From any standpoint. Right. And that's why any punishment directed towards them is violation of the 14th Amendment. And we've never argued that there was a constitutional transgression in terms of the act, other than it was not committed under color of state law. Now, I'm back to the question I started you with. On what basis do you defend the district courts granted summary judgment to parties that didn't move for it? I can only tell you what happened in the record, Your Honor. I'm looking for a case, a rule, a policy that would justify granting summary judgment to parties who don't move for it. Those aren't my ‑‑ I don't represent those parties individually.  I don't know the answer. You'd have to concede at the least if a court is going to sue a spotty grant judgment. The court has to give some notice and an opportunity for a hearing on that and so forth, right? I agree. The issue of the district court rule, though, is one that was before the court in your motion, I take it. Yes, Your Honor. The color of law issue was the first argument. Monell's supervisory was the second, not in terms of strength, but just in terms of the logical sequence of it. And the court granted summary judgment on both. The individual defendants represented by another counsel, when the reconsideration motion was brought up, the court reaffirmed that it granted summary judgment on color of law and for that reason extended it to the individuals alone.  Thank you, Your Honor. Thank you. Thanks for coming down. Rebuttal? Counsel? Yes, Your Honor. Thank you. I've always called this a prank. I mean, this was clearly a violation. We have case law in the Fifth Circuit. There was a Townsend case where a prison guard was involved in horseplay and it was found that he did not misuse his authority and did not act under color of state law when he stabbed an inmate with a knife. I mean, it takes two people to participate in horseplay. I mean, these inmates were in their module minding their own business, and all of a sudden they hear firecrackers. There's nothing they can do about it. They're under the control of these officers. The correctional officers are supposed to be professional. I'd like to reiterate again that my clients lost their hearing because of this. They were wearing uniforms. I mean, there's nothing these people could do. They have no control over it. All they can do is file a grievance with the jail. Or sue for damages in state court. Correct. Correct. And I would also like to reiterate this court, oh, I haven't mentioned it. It was in the briefs, this court's decision in Dang Bang where refugees were raped, and this court found that the officials were capable of harassing only because their jobs enabled frequent contact. And I think that's the situation we have here. We have pretrial detainees who were harassed by these officers, and these officers were only allowed to harass them because of their status as officers within the jail. And I would like to submit it on that. Okay. Thank you. Thank you to both sides for their arguments. The case just argued will be submitted for decision, and we'll proceed to the next case on the calendar.
judges: Hawkins, Thomas, Clifton